WO                                                                                                           SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glen Wilson, | No. CV 19-08306-PCT-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Yuri M. Lewicky, et al., | |
| Defendants. | |

Plaintiff Glen Wilson, who is confined in the Federal Correctional Institution in Phoenix, Arizona, filed a pro se civil rights Complaint (Doc. 1) pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and an Application to Proceed In Forma Pauperis (Doc. 4). The Court granted the Application and dismissed the Complaint (Doc. 6).[1] Plaintiff subsequently a First Amended Complaint (Doc. 9), which the Court dismissed for failure to state a claim with leave to amend (Doc. 11).[2] Plaintiff has filed a Second Amended Complaint (Doc. 14). The Court will dismiss the Second Amended Complaint and this case for lack of

---

[1] In the Order, the Court indicated that it was dismissing the Complaint with leave to amend, but the final page of the Order dismissed the Complaint and this action and Judgment was entered by the Clerk of Court (Doc. 8). The Court will vacate entry of Judgment and order this case reopened.

[2] In the First Amended Complaint, Plaintiff cited 28 U.S.C. § 1331 and medical malpractice as the bases for subject matter jurisdiction. Plaintiff failed to allege facts to support that the Court had federal question subject matter jurisdiction under 28 U.S.C. § 1331, but the Court concluded that he might be able to do so in a second amended complaint.

subject matter jurisdiction.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.    Second Amended Complaint**

In his one-count Second Amended Complaint, Plaintiff asserts a claim for medical malpractice. Plaintiff sues Dr. Yuri Lewicky, an orthopedic surgeon, for surgery performed when Plaintiff was not in custody. Plaintiff seeks $10 million in punitive relief.

**A.    Background**

Plaintiff was convicted of federal offenses on April 26, 2006 and sentenced to prison for five years followed by supervised release for five years. *United States v. Wilson*, No.3:05cr00657-PCT-JAT (D. Ariz. Apr. 26, 2006), Doc. 43. Plaintiff was released on supervised release after completing his prison term, which was revoked multiple times for violations of the terms of supervised release. *Id.*, Docs. 87, 103, 107 (amended order), 124, and 140. At the time of the events at issue in the Second Amended Complaint, Plaintiff was *not* imprisoned, but he was on supervised release. Subsequent to the events at issue in the Second Amended Complaint, Plaintiff was again charged with violating the conditions of supervised release, and, on August 24, 2018, the Court revoked supervised release and sentenced Plaintiff to serve 36 months in prison. *Id.*, Doc. 140. While in prison, Plaintiff filed this action.

**B.    Plaintiff's Allegations**

Except as otherwise indicated, Plaintiff alleges[3] the following:

On June 7, 2016, while on supervised release, Plaintiff injured his left knee and was seen in the emergency room of the Indian Health Service[4] in Fort Defiance, Arizona.[5] Dr. Oseni ordered an MRI of Plaintiff's left knee, which was performed on June 16, 2016. Plaintiff returned home with instructions to use crutches, to stay off his feet as much as possible, and to elevate and ice his left knee. Plaintiff received a "referral from Dr.

---

[3] The Court includes some of Plaintiff's allegations from the First Amended Complaint for additional context.

[4] The Indian Health Service is a division of the Public Health Service of the United States Department of Health and Human Services. *Benavidez v. United States*, 177 F.3d 927, 928 n.1 (10th Cir. 1999).

[5] Plaintiff is Native American. *See* https://www.bop.gov/inmateloc/, search Register# 83048-008 (last accessed June 15, 2020).

1  Marshall L. Cook, to report to Northern Arizona Orthopedic Hospital" ("the Hospital").
2  (*See* Doc. 9 at 2.)  Plaintiff reported to the Hospital on August 22, 2016 for examination.
3  Dr. Bourck Cashmore referred Plaintiff to Defendant Dr. Lewicky.  On August 25, 2016,
4  Plaintiff visited Dr. Lewicky, who recommended arthroscopic assisted ACL and PCL
5  reconstruction in addition to open MCL and posterior oblique ligament reconstruction and
6  removal of tibial hardware, which would require an overnight stay.  On September 23,
7  2016, Dr. Lewicky performed arthroscopic surgery on Plaintiff's left knee at the Hospital.
8  At some point after the surgery, Plaintiff discovered that the surgical wound had not
9  completely healed and was swollen and draining.  Plaintiff is experiencing excruciating
10 pain in his left knee, and he claims that Dr. Lewicky failed to complete his left knee
11 reconstruction.  Plaintiff claims that sutures remained in the wound, which caused the
12 wound to become infected and fail to close.  Plaintiff claims that Dr. Lewicky "completely
13 ignored the removal of the old ACL retain hardware."  (Doc. 14-1 at 4.)

14 Attached to the Second Amended Complaint is an "Operative Report" dated July
15 25, 2019 and signed by Dr. Michael R. Hayman.  (Doc. 14-1 at 6).  Hayman states as both
16 his pre- and post-operative diagnoses, "Left tibial incision, status post anterior cruciate
17 ligament reconstruction in the remote past with persistent drainage and retained hardware."
18 (*Id.*)  Dr. Hayman states that he performed, "Left tibia irrigation and debridement with
19 removal of hardware; irrigation and debridement, arthroscopic, of the knee; bone grafting
20 of the retained hardware site, left tibia." (*Id.*)  Dr. Hayman states in part, "This is a 44-
21 year-old who has had multiple surgeries on his left knee.  The last one was an ACL
22 reconstruction after what sounds like a possible failed prior reconstruction." (*Id.*)  The
23 report also indicates that aerobic, anaerobic, and fungus cultures were then-negative.  (*Id.*
24 at 13-15.)  Plaintiff has also attached a September 23, 2016 "FMC Operative Report." (*Id.*
25 at 16-20.)  In addition, Plaintiff has attached a May 9, 2019 report by Dr. Hayman in which
26 he noted drainage and treatment with antibiotics of infection.  (*Id.* at 21-28.)

27 **III.  Subject Matter Jurisdiction**
28 Federal courts are courts of limited jurisdiction and only have subject matter

jurisdiction over matters authorized by the Constitution and Congress.  A federal district court, like this one, may exercise subject matter jurisdiction based on federal question subject matter jurisdiction under 28 U.S.C. § 1331 or based on diversity subject jurisdiction under 28 U.S.C. § 1332.

### A.     Diversity Subject Matter Jurisdiction

District courts also have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States …." 28 U.S.C. § 1332(a)(1).  For purposes of diversity jurisdiction, the plaintiff(s) and defendant(s) must be completely diverse.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("we have consistently interpreted § 1332 as requiring complete diversity:  In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008).  "Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enter.*, 231 F.3d 1129, 1131 (9th Cir. 2000).

Plaintiff does not purport to seek relief under § 1332, and he has alleged no facts to support that the parties are diverse.  Accordingly, the Court lacks diversity subject matter jurisdiction.

### B.     Federal Question Subject Matter Jurisdiction

Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff asserts a claim for medical malpractice, but he fails to identify how a medical malpractice claim arises under the Constitution, laws, or treaties of the United States.

As the Court noted in its last Order, Plaintiff did not allege facts to support that Dr. Lewicky was a federal employee or acted under color of federal law.  In his Second Amended Complaint, Plaintiff again does not allege that Dr. Lewicky was a federal employee or that he was in any affiliated with Indian Health Care Services.  Consequently,

Plaintiff fails to allege facts to support that this Court has federal question subject matter jurisdiction.

### C. Conclusion

As discussed herein, Plaintiff has failed to allege facts to support that this Court has subject matter jurisdiction over his claims. Accordingly, the Court will dismiss the Second Amended Complaint and this case.

**IT IS ORDERED:**

(1) The Second Amended Complaint (Doc. 14) is **dismissed** for lack of subject matter jurisdiction.

(2) The Clerk of Court must enter a judgment of dismissal of this action without prejudice for lack of subject matter jurisdiction.

Dated this 19th day of June, 2020.

James A. Teilborg
Senior United States District Judge